683 A.2d 303

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**James Dean LAWRENTZ.**

Superior Court of Pennsylvania.

Submitted Aug. 26, 1996.

Filed Sept. 17, 1996.

Francis Schultz, Assistant District Attorney, Meadville, for Com., appellant.

Jack W. Cline, Mercer, for appellee.

Before TAMILIA, SAYLOR and OLSZEWSKI, JJ.

TAMILIA, Judge.

The Commonwealth appeals from the April 18, 1996 Order suppressing the results of a blood alcohol test conducted on appellee which revealed a blood alcohol content of .23 per cent. Suppression was ordered on the basis that the arresting officer, State Trooper John Michalak, lacked articulable and reasonable grounds to conduct the traffic stop which led to appellee's arrest.

Before turning to the merits of the Commonwealth's argument, we first address an issue which concerns the propriety of this appeal. Pa.R.A.P. 311(d), as amended, provides as follows:

## RULE 311. INTERLOCUTORY
## APPEALS AS OF RIGHT

. . . . . .

**(d) Commonwealth Appeals in Criminal Cases.** In a criminal case, under the circumstances provided by law, the Commonwealth may take an appeal as of right from an order that does not end the entire case where the Commonwealth *certifies in the notice of appeal* that the order will terminate or substantially handicap the prosecution.

The italicized language, which requires that the Commonwealth's certification be placed in the notice of appeal, was

added by amendment dated April 10, 1996, and became effective on April 27, 1996.[1] The notice of appeal in the instant case was filed on May 23, 1996, and thus was subject to the certification placement requirement of amended Rule 311(d). However, the Commonwealth's notice of appeal did not include the required certification. Instead, as was common prior to the amendment, the Commonwealth included the certification in its appellate brief. Having been alerted to the deficiency in its notice of appeal, the Commonwealth also sent to this Court a letter dated June 12, 1996 in which it again certified that the suppression Order substantially handicapped the prosecution of this case. The question thus becomes whether amended Rule 311(d) requires the quashal of this appeal due to the Commonwealth's failure to include the required certification in the notice of appeal. Apparently, this question has not yet been specifically addressed by our courts.[2]

Nonetheless, because of the close proximity between the effective date of amended Rule 311(d) and the filing of the instant notice of appeal, and in the interest of judicial economy, we find that for purposes of this appeal, the Commonwealth's certification letter of June 12, 1996 constitutes an

---

**1.** Prior to the amendment of April 10, 1996, Rule 311(d) provided as follows:

> **Rule 311. Interlocutory Appeals as of Right**
> **(d) Commonwealth Appeals in Criminal Cases.** In a criminal case, under the circumstances provided by law, the Commonwealth may take appeal as of right from an order that does not end the entire case but where the Commonwealth asserts that the order will terminate or substantially handicap the prosecution.

**2.** In *Commonwealth v. Malinowski*, 543 Pa. 350, 671 A.2d 674 (1996), an Opinion filed less than two months before the amendment of Rule 311(d), our Supreme Court stated in a footnote:

> Although we have not explicitly stated in the past at what point in the appellate process the Commonwealth must make the *Dugger* certification, *we think it is a better practice to require the certification in the filing of the notice of appeal.*

*Id.* at 358 n. 8, 671 A.2d at 678 n. 8.

Since *Malinowski* apparently suggests, rather than mandates, that certification be placed in the notice of appeal, and because it was filed prior to the amendment of Rule 311(d), it is of limited use to our analysis.

amendment of the notice of appeal.[3] This approach is more expedient than remanding the case with directions that the Commonwealth file a petition for such an amendment, and it avoids the harsh result of quashing the appeal based on such a recent amendment. However, we caution the Commonwealth that future failures to comply with the mandate of Rule 311(d) may well result in the appeal being quashed.

■ Turning to the merits of the Commonwealth's appeal, we note that in reviewing a suppression Order, we must first ascertain whether the record supports the suppression court's factual findings and then determine the reasonableness of the inferences and legal conclusions drawn therefrom. *Commonwealth v. Oglialoro*, 377 Pa.Super. 317, 547 A.2d 387 (1988), *citing Commonwealth v. Lemanski*, 365 Pa.Super. 332, 341–42, 529 A.2d 1085, 1089 (1987).

In ordering suppression, the court stated as follows:

[T]he conduct of the defendant herein did not display a reckless disregard for the safety of others and the slight crossing of the center line over a distance of a mile to a mile and a half without creating a safety hazard is simply inadequate evidence to make a stop.

(Slip Op., Thomas, S.J., p. 2.) Our review indicates that the suppression court's findings of fact and conclusions of law are unsupported by the record. Thus, we vacate the suppression Order of April 18, 1996.

■ Initially, we reject the court's finding that appellee engaged in only a "slight crossing of the center line ... without creating a safety hazard". The testimony of Trooper Michalak, which was not rebutted by appellee, indicates the following:

Q. [DISTRICT ATTORNEY]: Please describe what you saw the [appellee's] red pickup truck do, if anything?

A. At the time, I was travelling southbound. I observed the red pickup truck weaving in between the center lines and fog line of the roadway. This occurred for approxi-

---

**3.** We note that appellee did not file a motion to quash in this case.

mately a mile, mile and a half, at the most. During that time, that vehicle had crossed the center line on two separate occasions. The center line itself.

. . . . .

Q. Trooper Michalak, you testified that you observed the defendant's vehicle swaying for about a mile, mile and a half. Is that correct?

A. Yes, sir.

Q. Would you characterize this driving as safe or unsafe driving?

A. I would characterize it as unsafe driving.

(N.T., 4/4/96, pp. 4–5, 13.) Although appellee testified briefly concerning the general condition of the roadway, neither the prosecutor nor defense counsel elicited any testimony concerning the manner in which appellee was driving. No other witnesses testified. Thus, the unrebutted testimony presented at the suppression hearing was that appellee was "weaving" and "swaying" for up to a mile and a half and that he had crossed the center line on two occasions.

Similarly, the suppression court's conclusion that appellee "did not display a reckless disregard for the safety of others" completely ignores the uncontradicted testimony of Trooper Michalak, which indicates the following:

Q. [DISTRICT ATTORNEY]: Now you said there was a vehicle in between you and the red truck, is that correct?

A. That's correct.

Q. And what was that vehicle doing in response to the red pickup truck's actions?

A. As I was following the vehicle, my main concern was keeping an eye on the pickup truck. Observing its driving habits. At the same time, the vehicle in between us had backed off from this truck also. Slowing down. And backing off.

(N.T. at 5.) Appellee also acknowledged that there were vehicles both in front of and behind him and that traffic was traveling between 50 and 55 miles per hour (N.T. at 18).

Appellee did not testify concerning any effect his driving may have had on the other vehicles. Therefore, the sole and unrebutted testimony presented at the suppression hearing was that "in response to" appellee's driving, other traffic on the road was forced to "back off" and "slow down". The fact that these vehicles were traveling in excess of 50 miles an hour, as admitted by appellee, clearly establishes that appellee's driving created a safety hazard. At the very least, appellee's driving can be considered erratic, and, on this basis alone, Officer Michalak possessed a legally sufficient basis on which to conduct an investigatory stop. *See Commonwealth v. Hamme*, 400 Pa.Super. 537, 540, 583 A.2d 1245, 1247 (1990) ("[W]e have held that erratic driving provides a sufficient, reasonable basis to support an investigatory stop.").[4]

In summary, this case presents a scenario in which a vehicle driving at a high rate of speed weaves down the roadway for over a mile, crossing the center line twice and forcing other vehicles to alter their speed and location. The police have not only the authority, but the obligation, to prevent such driving.

Based on the foregoing, we find that Officer Michalak conducted a valid investigatory stop of appellee's vehicle. Hence, we vacate the April 18, 1996 suppression Order and remand for further proceedings consistent with this Opinion.

Order vacated.  Case remanded.

Jurisdiction relinquished.

---

4. The suppression court also found significant an exhibit introduced by appellee's counsel which indicated that the center line on the road in question had been painted after the date on which appellee was arrested (N.T. at 14–15). However, appellee's counsel was unable to state whether the exhibit indicated that the line had been painted for the first time, or merely repainted (N.T. at 15). Moreover, appellee's own testimony established that a center line, albeit a dotted one, was on the road at the time of his arrest (N.T. at 17).