J-S50040-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| WILLIAM ANTHONY PUTT | |
| Appellee | No. 464 WDA 2014 |

Appeal from the Order entered March 11, 2014,
in the Court of Common Pleas of Cameron County,
Criminal Division, at No(s): CP-12-CR0000073-2013

BEFORE:  FORD ELLIOTT, P.J.E., SHOGAN, and ALLEN, JJ.

MEMORANDUM BY ALLEN, J.:                    **FILED AUGUST 11, 2014**

The Commonwealth appeals from the order granting the suppression motion of William Anthony Putt ("Appellee").  For the reasons set forth below, we quash.

The trial court made findings of fact as follows:

> During the evening of May 28, 2013, various members of the Pennsylvania State Police, including Corporal Theodore Race, were called to investigate a noise complaint in the nature of loud music emanating from a residence at 224 West Fourth Street in Emporium, Pennsylvania.  While in the course of investigating the noise complaint, the troopers viewed various items of what they believed to be contraband inside the residence and decided to submit an application for the issuance of a search warrant. Corporal Race stayed at the residence to secure it while the other troopers prepared the search warrant application.

> While Corporal Race remained on the porch of the residence, Troopers Gerg and Miller appeared at the 224 West Fourth Street address at about 11:30 p.m.

During the time Corporal Race was on the porch of the 224 West Fourth Street residence and after the arrival of Troopers Gerg and Miller, a green 1995 Chevrolet pickup truck drove past the residence on multiple occasions and the driver and sole occupant yelled unspecified comments towards the vicinity of the troopers.

After seeing the truck pass by several times, Corporal Race directed the beam of his flashlight at the pickup and identified the driver as [Appellee] William Anthony Putt.

[Appellee] eventually stopped his travels up and down West Fourth Street and parked the pickup along the curb about 50 feet from the location of the troopers.

After exiting the truck, [Appellee] walked towards the troopers, with Trooper Gerg engaging [Appellee] first and directing his flashlight beam at [Appellee] since it was dark and the area was otherwise illuminated by ambient light from streetlights or nearby residences.

There was nothing unusual noted about the operation of the pickup truck other than the frequency in which it passed the trooper's location nor was there anything unusual about [Appellee's] gait or movement as he exited the truck and walked toward the troopers.

When in close proximity to the troopers, [Appellee] stopped about three or four feet from Trooper Gerg and asked "What's going on"?

With his flashlight beam cast on [Appellee], Trooper Gerg noticed that [Appellee's] pupils appeared to be constricted. Trooper Gerg also thought [Appellee] was somewhat agitated ... He also noted no odor of alcoholic beverage emanating from [Appellee].

Trooper Gerg inquired of [Appellee] whether he was taking any medication, and [Appellee] responded that he took medication for anxiety.

Corporal Race, who has received training in recognition of the effects of imbibing of controlled or counterfeit substances, was within earshot of [Appellee] and Trooper Gerg and

overheard their initial conversation. He then approached [Appellee] and after waiting about a minute and a half to two minutes, turned his flashlight beam toward [Appellee's] face, at which point he also noticed that [Appellee's] pupils appeared to be constricted.

Based solely on Trooper Race's observation that [Appellee's] pupil size had not appeared to change from the time Trooper Gerg removed his flashlight beam from [Appellee's] face until Trooper Race again illuminated [Appellee's] face with his flashlight and [Appellee's] recitation that he took medication for anxiety, Trooper Race requested that [Appellee] submit to field sobriety tests.

In Corporal Race's opinion, [Appellee] did not successfully perform the one-legged stand field sobriety test, but there was no evidence presented whatsoever as to how the test was administered or performed.

In addition to the one-legged stand test, Corporal Race also conducted [horizontal gaze nystagmus] testing and ascertained clues from that testing suggestive of [Appellee's] having ingested a controlled or counterfeit substance, although these clues were based entirely on observations of [Appellee's] pupils.

Based on the troopers' observations of [Appellee's] pupils and the administration of field sobriety tests, [Appellee] was arrested for driving after imbibing and taken to Elk Regional Health Center in St. Marys, Pennsylvania for blood testing.

Trial Court Findings of Fact, 3/11/14, at 1-3; Affidavit of Probable Cause, 7/3/13.

Appellee was charged with two counts of driving under the influence and one count of careless driving.[1] Appellee filed a suppression motion on November 4, 2013, and following a hearing, the trial court on March 6, 2014, granted Appellee's motion.[2] This appeal followed. Both the Commonwealth and the trial court have complied with Pa.R.A.P 1925.

The Commonwealth presents a single issue for our review:

> WHETHER TWO STATE POLICEMEN, ONE A DRUG RECOGNITION EXPERT, HAD REASONABLE GROUNDS PER § 1574 OF THE MOTOR VEHICLE CODE TO BELIEVE A DRIVER WAS UNDER THE INFLUENCE OF A CONTROLLED SUBSTANCE, SPECIFICALLY, A NARCOTIC, AND SUBJECT HIM TO FIELD SOBRIETY TESTS AFTER HE DROVE BACK AND FORTH NUMEROUS TIMES LATE AT NIGHT PAST THEM WITH THE WINDOWS OPEN YELLING AT THEM, PARKED THE VEHICLE IN FRONT OF THEM, EXITED AND APPROACHED THEM AND IN AN AGITATED STATE EXHIBITING CONSTRICTED PUPILS, DEMANDED TO KNOW WHY THE POLICE WERE THERE, AND WHEN QUESTIONED, ADMITTED HE WAS TAKING MEDICATION FOR ANXIETY?

Commonwealth Brief at 4.

Before we proceed to the merits of the Commonwealth's appeal from the order granting Appellee's suppression motion, we must determine whether we have jurisdiction. In **Commonwealth v. Knoeppel**, 788 A.2d 404 (Pa. Super. 2001) *appeal denied*, 806 A.2d 859 (Pa. 2002), we explained:

_____

[1] 75 Pa.C.S.A. §§ 3802(d)(1)(ii), (d)(2), and 3714(a).

[2] The trial court's order was docketed on March 11, 2014.

The jurisdiction of this Court is generally confined to appeals from final orders of the courts of common pleas. An order is final if it effectively puts a litigant out of court; thus, pretrial orders are ordinarily considered interlocutory and not appealable. "However, an exception to the final order rule exists in orders of the trial court suppressing evidence the Commonwealth seeks to admit in a criminal trial." A Commonwealth appeal in a criminal case is governed by Pennsylvania Rule of Appellate Procedure 311, which permits the Commonwealth to take an interlocutory appeal as of right from a pretrial suppression order when the Commonwealth certifies that the order will "terminate or substantially handicap the prosecution." Pa.R.A.P. 311(d). "Such certification is required as a means of preventing frivolous appeals and appeals intended solely for delay."

\*\*\*

[I]n **Commonwealth v. Malinowski**, 671 A.2d 674 (1996), the Supreme Court clarified that the Commonwealth's certification must appear in the notice of appeal [and] held that "the failure to comply with the [311(d)] certification renders the suppression order unappealable." Moreover, to clarify the Commonwealth's responsibility in future appeals, the Court specifically stated:

> Thus, we require that in addition to the requirements laid out in … the Pennsylvania Rules of Appellate Procedure, the Commonwealth, when appealing a suppression order, must include a statement, made in good faith, that the suppression order terminates or substantially handicaps its prosecution.

Shortly after the decision in **Malinowski**, Pa.R.A.P. 311(d) was amended to reflect this requirement. The following year, subdivision (e) was added to Pa.R.A.P. 904 to incorporate the Supreme Court's mandate [and Pa.R.A.P. 904(e) now provides]:

> When the Commonwealth takes an appeal pursuant to Rule 311(d), **the notice of appeal shall include** a certification by counsel that the order will terminate or substantially handicap the prosecution.

Pa.R.A.P. 904(e) (emphasis added).

- 5 -

***Knoeppel***, 788 A.2d at 406-407 (some citations omitted).

We concluded in ***Knoeppel*** that the Commonwealth's failure to include the requisite certification in its notice of appeal in accordance with Pa.R.A.P 311(d) and 904(e) constituted a fatal defect. We explained, "[w]ithout the certification, the Commonwealth has no right to appeal" and "[t]he inclusion of the certification in the Criminal Docketing Statement or in the Commonwealth's appellate brief does not cure the defect." ***Id.*** at 407 (citation omitted). Consequently, we quashed the Commonwealth's appeal.

In the present case, as the trial court observes, "[t[here is absolutely no reference in the Commonwealth's notice of appeal filed in the instant action on March 14, 2014, that the order to which the appeal has sought to be taken will either substantially handicap or terminate the prosecution. Although the certification is required to be included in the notice of appeal itself, there is also nothing recited in the Commonwealth's concise statement filed March 25, 2014, which references that the prosecution would be ended or rendered infirm by the grant of [Appellee's] omnibus pretrial motion and the suppression of evidence." Trial Court Opinion, 4/11/14, at 2 (unnumbered).

Our independent review of the certified record confirms the trial court's observation that the Commonwealth failed to include in its notice of appeal a certification that the trial court's order will terminate or substantially handicap the prosecution. Although the Commonwealth's reproduced record

includes a one-page document entitled Rule 311(d) certification, dated April 1, 2014, there is no indication that this document was filed with the lower court, as it is not date-stamped, and does not appear in the certified record. Because "[a]n item does not become part of the certified record by simply copying it and including it in the reproduced record", we may not consider the Rule 311(d) certification in the Commonwealth's reproduced record. ***Commonwealth v. Bracalielly***, 658 A.2d 755 (Pa. 1995). Moreover, in its reply brief, the Commonwealth concedes that "it overlooked the requirement of the Rule 311(d) Certification at the time that the Notice of Appeal was filed but would note that when this error was discovered at the time of preparation and filing of the Docketing Statement, the same was forwarded to and filed with the Superior Court, being annexed to the said Docketing Statement." Commonwealth Reply Brief at 2 (unnumbered).

Given the foregoing, and in accordance with ***Knoeppel***, ***supra*** (holding that it is fatal for the Commonwealth to fail to include the Pa.R.A.P 311(d) certification in its notice of appeal and subsequent inclusion does not cure the defect), we are constrained to quash the Commonwealth's appeal.

Appeal quashed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/11/2014